UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RONALD A.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:21-CV-375-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Ronald A. ("Mr. A)") seeks judicial review of the Social Security Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.    OVERVIEW OF THE CASE**

Mr. A applied for DIB on August 16, 2018. In his application, he alleged a disability onset date of May 10, 2018. Mr. A's application was denied initially on January 28, 2019, and upon reconsideration on April 10, 2019. Following a telephone hearing on May 6, 2020, the Administrative Law Judge ("ALJ") issued a decision on

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

June 25, 2020, which affirmed the Social Security Administration's denial of benefits. The ALJ found that Mr. A suffers from the severe impairments of cervical spondylosis and radiculitis, obesity, coronary heart disease, and residuals of electrocution. However, the ALJ found that none of Mr. A's severe impairments, nor any combination of his impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Mr. A has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain additional limitations. Mr. A has past relevant work as a route sales delivery driver manager, order picker, coil machine operator, heavy equipment operator, and general laborer. In view of Mr. A's RFC, the ALJ found that Mr. A would be able to perform his past relevant work as a route sales delivery driver manager; however, this finding was predicated on the testimony of Vocational Expert (VE) that, based on her experience, a route sale deliver driver manager does not require any overhead reaching.[2] Based upon these findings, the ALJ denied Mr. A's claim for DIB.

## II.    DISABILITY STANDARD

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental

---

[2] *Cf.* The Dictionary of Occupational Titles (DOT) state that a Supervisor, Route Sales-Delivery Drivers, "may drive vehicles" and "may load vehicles." *See,* DOT 292.137-014. Notably, Mr. A testified that, when he worked as a sales manager at Schwann's, he got in and out of trucks and loaded and unloaded trucks and semitrailers [DE 10 at 44-45]. As such, his job may have been a hybrid between a driver and a manager. The ALJ and VE can consider that aspect of Mr. A's case upon remand.

impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear

3

the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

### IV. ANALYSIS

Mr. A argues that the ALJ erred in developing the RFC because it fails to include all of Mr. A's impairments, contains factual omissions, and is not supported by substantial evidence. Further, Mr. A asserts that the ALJ's opinion errs when considering the extent that the intensity, persistence, and limiting effects of Mr. A's symptoms impact his ability to work.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether

there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. *See* 20 C.F.R. § 416.929(a). Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *Id.* In evaluating the intensity, persistence, and limiting effects of symptoms, the ALJ considers subjective statements regarding symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a). Relevant factors include:

> (1) The individual's daily activities;
>
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
>
> (3) Precipitating and aggravating factors;
>
> (4) Type, dosage, effectiveness, and side effects of any medication;
>
> (5) Treatment, other than medication, for relief of pain or other symptoms;
>
> (6) Other measures taken to relieve pain or other symptoms;
>
> (7) Other factors concerning functional limitations due to pain or other symptoms.

*See id.* § 404.1529(c)(3). This analysis must focus on "the extent to which the symptoms reduce the individual's capacity to perform work-related activities." *Wade v. Berryhill*, No. 2:17-CV-278, 2018 WL 4793133, at *10 (N.D. Ind. Oct. 4, 2018) (citing SSR 16-3p). Moreover, the ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's]

statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4). So long as the ALJ gives specific reasons supported by the record, the Court will not overturn this determination unless it is "patently wrong." See *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

Here, Mr. A. asserts that the ALJ erred in failing to properly evaluate the opinions of treating physician Dr. Joseph Legaspi and Dr. Shariq Ibrahim, as well as the records of Community Healthcare. For claims filed after March 27, 2017, such as Mr. A's claim, the rules dictating how an ALJ is to weigh medical opinion evidence are set out in 20 C.F.R. § 404.1520c. The regulations require an ALJ to weigh the medical opinion using several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization.  20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors considered when analyzing a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ must "explain how [she] considered the supportability and consistency factors," but the ALJ is not required to explain how she considered the other factors if they are not relevant to the decision. *Id.* As to Mr. A's application, the ALJ stated:

6

> After careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[DE 10 at 21].

While the ALJ discusses medical records from May 10, 2018 (emergency room visit), and May 14, 2018 (EEG report), the ALJ fails to discuss significant and extensive portions of Mr. A's medical history. For example, the ALJ does not discuss other medical records from Community Healthcare, Dr. Legaspi, or Dr. Shariq Ibrahim.

The ALJ noted in his decision Mr. A was transported to the emergency department at Community Healthcare on May 10, 2018, because he had been electrocuted while operating a crane at work [DE 10 at 21]. Mr. A presented with "left sided numbness and weakness after an electrocution of 250v discharged through claimant's right wrist" [Id.]. However, the ALJ failed to discuss that Mr. A was seen again at the emergency room on May 11, 2018 (the following day), with additional complaints and symptoms associated with the electrocution [Id. at 389]. During this visit, Mr. A complained of residual muscle soreness and weakness, and numbness in his left arm [Id.]. The emergency room physician noted that Mr. A was positive for weakness and numbness and was also positive for nausea [Id.]. At that point, Mr. A was admitted for further testing [Id. at 391-393]. A CT scan did not show ischemia or infarction or CVA [Id. at 397]; however, an MRI showed small vessel occlusive disease [Id. at 415]. While Mr. A was discharged on May 15, 2018, a neurological evaluation

7

indicated that he suffered from the following symptoms: memory loss, seizure syncope, headache, blurred vision, double vision, dizziness, tinnitus, confusion, personality change, swallowing difficulty, sensory loss, loss of strength, imbalance, lack of coordination, abnormal gait, daytime sleepiness, and hallucinations [Id. at 426].

Dr. Legaspi examined Mr. A on May 23, 2018. [Id. at 314]. At that time, Mr. A still had visible entrance and exit wounds produced by the electrical shock [Id.]. He complained of fatigue, nausea, muscle cramps, headaches, blurred vision, trouble swallowing, and pain in his arms and neck. [Id.]. Upon examination, Dr. Legaspi diagnosed Mr. A with (1) electrocution – primary; (2) coronary artery disease involving native coronary artery of native heart without angina pectoris; (3) hypertensive heart disease without heart failure, right arm weakness; (4) dyslipidemia; and (5) cerebrovascular accident (CVA). [Id. at 311]. As Mr. A was suffering from speech and physical impairments at the time of the examination, Dr. Legaspi ordered both speech therapy and physical therapy [Id. at 314]. The ALJ does not mention Dr. Legaspi's examination on May 23, 2018, in his opinion so it is impossible for the undersigned to determine if these medical findings were considered by the ALJ or not. This failure undermines both prongs of ALJ's two-step sequential process to create an RFC for Mr. A.

The ALJ also did not discuss Mr. A's treatment with Dr. Shariq Ibrahim. Dr. Ibrahim saw Mr. A on May 21, 2019. [Id. at 1398]. At that visit, Mr. A complained of continued neck pain as well as shoulder and arm pain [Id.]. Dr. Ibrahim observed that Mr. A's speech is still somewhat impaired but is much improved. [Id. at 1406]. He also

8

observed decreased range of motion in the cervical spine [Id.]. Dr. Ibrahim concluded that the shoulder and arm pain appear to be primarily residual effects from the electrocution incident [Id.]. Dr. Ibrahim prescribed continued use of Gabapentin [Id.]. Mr. visited with Dr. Ibrahim again on August 15, 2019 [Id. at 1396]. Mr. A continued to have neck and arm pain, and palpation of the neck and trapezius produced tenderness [Id. at 1399]. Dr. Ibrahim diagnosed Mr. A with bilateral arm pain, cervical spondylosis without myelopathy, and cervical radiculitis [Id.]. He discussed the use of medial branch blocks but this was discounted because Mr. A was not able to take Plavix at that time and Gabapentin and Cymbalta were continued [Id.]. As a result of Mr. A's limitation, Dr. Ibrahim authorized a disability parking placard for Mr. A. In his decision, the ALJ did not discuss Dr. Ibrahim's medical records and it is impossible for the undersigned to determine if the ALJ took Dr. Ibrahim's medical records into consideration in arriving at the RFC.

      The ALJ did find the opinion from cardiologist Dr. Wail Asfour unpersuasive because it was inconsistent with the medical evidence that indicated Mr. A had limitation in his neck and shoulder [Id. at 23]. However even this brief discussion does not ameliorate the lack of analysis of the other medical records. In the final analysis, the ALJ engaged in impermissible cherry-picking, which requires remand. *Denton*, 596 F.3d at 426; *see also Wilson*, 48 F. Supp. 3d at 1147.

      Mr. A makes other arguments regarding the medical opinions and the Listings analysis, but the Court need not discuss those other arguments at this time. The ALJ will have the opportunity to fully discuss and reevaluate the rest of Mr. A's allegations

9

on remand. This is not to say that there are no other errors in the ALJ decision, but the Court need not discuss them when errors are already present in the ALJ's analysis and discussion of Mr. A's medical records.

**V.   CONCLUSION**

For the reasons stated above, the ALJ failed to support his decision finding Mr. A is not disabled with substantial evidence. *See Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012); *Roddy,* 705 F.3d at 636; *Scott,* 297 F.3d at 595. Accordingly, the Commissioner's decision is **REMANDED** for further consideration consistent with this opinion.

**SO ORDERED** this 14th day of March 2023.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge